# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| REBECCA CLARK and JAMES SMITH, on behalf of themselves and all others similarly situated, | § § § § | |
| | § | No. 167, 2015 |
| Plaintiffs Below-Appellants, | § § | |
| | § | Court Below: Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | § § § § | C.A. No. N14C-02-188 JRJ |
| | § | |
| Defendant Below-Appellee. | § | |

Submitted: December 9, 2015
Decided: January 11, 2016

Before **STRINE**, Chief Justice; **HOLLAND** and **SEITZ**, Justices.

Upon appeal from the Superior Court. **AFFIRMED**.

John S. Spadaro, Esquire (*Argued*), John Sheehan Spadaro, LLC, Smyrna, Delaware, for Appellants.

Colin M. Shalk, Esquire (*Argued*), Casarino Christman Shalk Ransom & Doss, P.A., Wilmington, Delaware; Cari K. Dawson, Esquire, Kyle G.A. Wallace, Esquire, Alston & Bird LLP, Atlanta, Georgia, for Appellee.

**STRINE**, Chief Justice:

## I.  INTRODUCTION

Section 2118B(c) of Title 21 is the focus of this putative class action.  The statute provides that an insurer "shall" process and either pay or deny a claim for motor vehicle insurance benefits within thirty days of the insurer's receipt of such a request.[1]  It also provides that "[i]f an insurer fails to comply with the [thirty-day requirement]," then the insurer must also pay the claimant interest at a rate that ranges from 1.5% to 2.5% per month depending on the length of the delay.[2]

The plaintiffs both have policies with State Farm Mutual Automobile Insurance Company and both submitted claims that State Farm failed to pay within

---

[1] 21 *Del. C.* § 2118B(c).

[2] *See id.*  In full, § 2118B(c) provides:

> When an insurer receives a written request for payment of a claim for benefits pursuant to § 2118(a)(2) of this title, the insurer shall promptly process the claim and shall, no later than 30 days following the insurer's receipt of said written request for first-party insurance benefits and documentation that the treatment or expense is compensable pursuant to § 2118(a) of this title, make payment of the amount of claimed benefits that are due to the claimant or, if said claim is wholly or partly denied, provide the claimant with a written explanation of the reasons for such denial.  If an insurer fails to comply with the provisions of this subsection, then the amount of unpaid benefits due from the insurer to the claimant shall be increased at the monthly rate of:
>
> > (1)    One and one-half percent from the thirty-first day through the sixtieth day; and
> >
> > (2)    Two percent from the sixty-first day through the one hundred and twentieth day; and
> >
> > (3)    Two and one-half percent after the one hundred and twenty-first day.

*Id.*

1

the statutory thirty-day period. The plaintiffs earlier alleged that State Farm had failed to make the required statutory interest payments to them and other claimants whose PIP claims had not been processed within thirty days. When that theory did not pan out and they faced summary judgment, the plaintiffs reformulated their pursuit of class-wide relief by proposing to file an amended complaint seeking a declaratory judgment from the Superior Court that State Farm must process all PIP claims within thirty days.

The Superior Court denied the motion for leave to amend, reasoning that amending the complaint would be futile because no case or controversy existed because the plaintiffs had been paid the required statutory interest. The court then granted summary judgment to State Farm.

On this appeal, the plaintiffs allege that the Superior Court was wrong to dismiss their claim, arguing that they have a ripe disagreement with State Farm over its failure to comply invariably with the thirty-day deadline set forth in § 2118B(c). In this opinion, we affirm the Superior Court, but on a somewhat different ground. The plaintiffs are correct that absent declaratory (or injunctive) relief, it may be that they and other class members will have a claim in the future processed by State Farm in more than thirty days. But, we agree with the Superior Court that the amended complaint is futile because as plainly written, § 2118B(c) does not impose an invariable standard that every PIP claim must be processed

within thirty days and, in fact, contemplates that will not be the case by establishing a statutory consequence for the failure to do so. On its face, § 2118B(c) does not leave room for a claim asking the Judiciary to affirmatively govern the operations of an insurer by dictating (in some form of complicated injunctive decree) that it must process all claims within thirty days, that it must process most claims within thirty days, or that it must process all claims within thirty days except in judicially defined circumstances. The statute is not written in that manner, and to interpret it as leaving a huge gap to be filled by intrusive and legislatively unguided judicial regulation of the insurance industry as the plaintiffs assert would strain its words beyond reason and require our Judiciary to play an amorphous role that there is no indication the General Assembly intended for it. Under the Insurance Code, the Insurance Commissioner is empowered to investigate and enforce any violations of the Code. That role cannot be subsumed by the Judiciary in the guise of giving effect to § 2118B(c).

## II.  BACKGROUND[3]

### 1. The Start Of Litigation

Rebecca Clark and James Smith (the "Policyholders") are named insureds under State Farm automobile insurance policies. Both filed claims for benefits on

---

[3] Unless otherwise noted, all facts are taken from the Superior Court's opinion denying the plaintiffs' motion for leave to amend the complaint, *Clark v. State Farm Mut. Auto. Ins. Co.*, 2015 WL 1518662 (Del. Super. Mar. 30, 2015), and its later order granting State Farm's motion for summary judgment, *Clark v. State Farm Mut. Auto. Ins. Co.*, 2015 WL 3882528 (Del. Super. June 23, 2015).

their PIP coverage with State Farm. State Farm began payments to Clark on May 16, 2013 following her accident on January 24, 2013. It began payments to Smith on November 1, 2011 following his accident on September 9, 2011.[4] State Farm continued making payments to Clark and Smith through October 29, 2013 and February 11, 2014, respectively. Thus, both of the Policyholders received payments more than thirty days after submitting their claims, but they also received the statutorily required interest. On February 20, 2014, the Policyholders filed a Proposed Class Action Complaint against State Farm premised on State Farm's alleged violations of § 2118B.

The plaintiffs' original focus was on whether State Farm was paying the full interest required when it processed payments after thirty days, and whether it was penalizing policyholders by deducting the statutory interest from their remaining policy limits. The complaint included four counts: (1) declaratory judgment; (2) breach of contract; (3) bad faith breach of contract; and (4) statutory consumer fraud. And the declaratory judgment theory was premised on the Policyholders' argument that "State Farm has adopted the practice of deducting an amount equal to the statutory interest penalty from its insured's limits of liability for PIP coverage."[5] But, that turned out not to be so.

---

[4] The record does not specify the dates on which the Policyholders filed their claims for PIP benefits.

[5] App. to Opening Br. at 25 (Original Complaint ¶ 16).

Facing a motion for summary judgment because their original theory did not pan out, the Policyholders changed their focus and sought to file an amended complaint on August 20, 2014. The proposed amended complaint abandoned the Policyholders' original argument that State Farm routinely deducted the statutory interest from the PIP coverage limits that it owed the insured. The amended complaint sought only a declaratory judgment that State Farm's failure to pay claims within thirty days of its receipt of written requests violated § 2118B(c).[6] As ballast for that contention, the Policyholders relied upon an answer that State Farm gave to an interrogatory that asked it to identify the number of PIP claims on which State Farm had made any statutory interest payments since February 20, 2011. State Farm replied that it made interest payments on 6,349 such claims during that period of over three years. The interrogatory did not ask what percentage of PIP claims that amounted to over the three-year period.

According to the Policyholders, State Farm's supposed regular failure to pay claims within thirty days deprives the policyholders of the benefit of their bargain under their insurance policies, because part of the insurance contracts with State Farm is compliance with statutory coverage determinations and payment deadlines. Irrespective of whether State Farm eventually pays claims in full plus the required statutory interest, the Policyholders assert that § 2118B(c)'s remedy provision is a

---

[6] *See* App. to Answering Br. at 57–60 (Proposed Amended Complaint ¶¶ 26–43).

"penalty" and that State Farm should not be allowed to skirt the thirty-day requirement by opting to pay the alleged penalty. They seek a judicial judgment that "State Farm must pay or deny claims for Personal Injury Protection coverage within 30 days of receipt of the claim."[7]

State Farm contested the motion for leave to amend, arguing that the Policyholders lacked standing because they did not plead any injury, and because the claim for declaratory relief was not ripe.

### 2. The Superior Court Denies The Policyholders' Motion For Leave To Amend And Grants State Farm's Motion For Summary Judgment

On March 30, 2015, the Superior Court denied the Policyholders' motion for leave to amend their complaint. The Superior Court focused correctly on the fact that Clark and Smith had received all of the interest contemplated by § 2118B(c), and that State Farm had not, as they originally alleged, been deducting the statutory interest from the amount of the claims. Thus, the only relief sought from the Superior Court was for it to issue a declaratory judgment that State Farm was required to process all claims within thirty days, regardless of circumstances, or to somehow craft a declaration of when delays by State Farm would be permissible.

The Superior Court viewed the complaint seeking this relief as futile, stating:

---

[7] *Id.* at 59 (Proposed Amended Complaint ¶ 35).

Here, Plaintiffs' proposed amendment is futile because no actual controversy exists. Plaintiffs' claim is not ripe for judicial review because Plaintiffs have not pleaded an immediate, or about to be immediate, controversy between the parties. While Plaintiffs contend State Farm wrongfully deducted statutory interest from Plaintiffs' PIP claim, the record reflects that the statutory interest was paid *in addition to* Plaintiffs' PIP claim. Thus, Plaintiffs already received the benefit of their bargain. Plaintiffs were entitled to compensation under their PIP coverage; however, State Farm failed to pay or deny Plaintiffs' PIP claim within the 30–day window. Accordingly, since State Farm did not pay the PIP compensation until after the statutory period, State Farm paid the statutory interest to the Plaintiffs in addition to their PIP benefits. Because State Farm has complied with § 2118B, Plaintiffs have failed to plead any additional injury, or any additional injury that may immediately occur in the future.

Plaintiffs' action for declaratory relief amounts to a request for an advisory or hypothetical opinion. Plaintiffs' proposed amendment voluntarily dismisses all of the previous four counts in the Complaint and adds a count solely for declaratory relief. Specifically, Plaintiffs ask the court for a "[d]eclara[tion] [of] the parties' rights, duties, status or other legal relations." Plaintiffs are not seeking any money damages, and granting such a declaration amounts to a non-justiciable advisory or hypothetical opinion.

The instant litigation is nearly identical to the scenario in *Myers v. Travelers Commercial Insurance Company*. In *Myers,* the plaintiffs sought a declaration that Travelers had improperly adopted a practice under § 2118B by delaying processing, payment, and denial of PIP claims. Plaintiffs in *Myers* also sought a declaration that Travelers' practice constituted a repudiation of the contractual obligations Travelers owed to its policyholders. This Court dismissed the plaintiffs' claim for lack of an actual controversy because the claim amounted to a request for an advisory opinion not ripe for adjudication.

Moreover, "[u]nder Delaware law, repudiation is an outright refusal by a party to perform a contract or its conditions entitling the other contracting party to treat the contract as rescinded." Under this theory, Plaintiffs do not seek a declaratory judgment based on

7

transactions that have been concluded. Instead, Plaintiffs ask the Court to grant declaratory judgment because Plaintiffs remain State Farm policyholders. As policyholders, they argue the value of their policy is reduced going forward because Plaintiffs bargained for PIP claims that are paid or denied within 30 days. Assuming these factual allegations to be true, Plaintiffs have failed to allege sufficient facts from which it can be reasonably inferred that State Farm's alleged practice constitutes a repudiation of the contractual obligations owed by State Farm to its Delaware automobile policyholders.[8]

## III. ANALYSIS

Although Rule 15 provides that leave to amend a complaint should be "freely given,"[9] leave to amend should be denied when the proposed amendment would be futile.[10] "A motion for leave to amend a complaint is futile where the amended complaint would be subject to dismissal under Rule 12(b)(6) for failure to state a claim."[11] Thus, we review the Superior Court's denial of the Policyholders' motion for leave to amend *de novo*, just as we would review a Rule 12(b)(6) dismissal.[12]

The parties' briefs are complicated on appeal, in large measure because the Policyholders' claims and their basis have been a bit of a moving target.[13] The

---

[8] *Clark v. State Farm*, 2015 WL 1518662, at *4–5 (emphasis in original) (footnotes omitted).
[9] Del. Super. Ct. Civ. R. 15(a).
[10] *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011); *Cornell Glasgow LLC v. La Grange Props., LLC*, 2012 WL 2106945, at *12 n.134 (Del. Super. June 6, 2012).
[11] *Price*, 26 A.3d at 166.
[12] *Id.*
[13] For example, the Policyholders assert on appeal that "the Superior Court erroneously failed to recognize and give effect to the plaintiffs' status as owners of State Farm." Opening Br. at 14. In short, the Policyholders argue that because State Farm is a mutual company, they are "owners" of State Farm and thus akin to stockholders.

8

central issue, though, is whether the Superior Court was correct in denying leave to amend because of futility. In arguing their respective positions, the parties duel over a number of issues,[14] but the central one that they dance around is § 2118B(c) itself, and whether it is a statute susceptible to specific judicial enforcement by the issuance of a declaratory judgment.

In addressing this issue, we concede the Policyholders' point that a class action can be used to remedy recurring violations of a class's rights, and that the fact that the named class representatives' own situation has been resolved does not necessarily mean that a class action cannot proceed. Indeed, one of the situations

But an appellant cannot present an argument for the first time on appeal. Supr. Ct. R. 8. State Farm correctly observes that the Policyholders raise their ownership argument now for the first time and did not fairly raise it below. The proposed amended complaint makes no reference to the Policyholders bringing a class action as owners of State Farm. In fact, the proposed amended complaint never mentions "owners" or "ownership." Rather, the Policyholders allege that their status as policyholders is what makes their claims typical of the class. The Policyholders plead that they "both are currently State Farm policyholders" and that "[a]ll members of the proposed class are likewise policyholders." App. to Answering Br. at 55–56 (Proposed Amended Complaint ¶ 22). Nor did the Policyholders' briefing on the motion to amend raise this issue. Thus, it is waived.

In any event, the Policyholders' attempt to rely on their status as owner is without merit for additional reasons. First, the proposed amended complaint does not plead facts that support a rational theory that the class members, as owners, have been the victims of a breach of fiduciary duty by State Farm and that they face injury in that capacity. Instead, as is consistent with the fact that the case below was argued only on behalf of the class as policyholders, the harm that is alleged is to State Farm PIP policyholders in that precise capacity. Furthermore, the Superior Court lacks jurisdiction over the Policyholders' fiduciary duty claims that they seek to bring as owners of State Farm. The Policyholders must bring a claim for breach of fiduciary duty in the Court of Chancery. *See Reybold Venture Grp. XI-A, LLC v. Atl. Meridian Crossing, LLC*, 2009 WL 143107, at *3 (Del. Super. Jan. 20, 2009); *Grace v. Morgan*, 2004 WL 26858, at *2 (Del. Super. Jan. 6, 2004).

[14] For example, the Policyholders argue that the case is not moot because the voluntary cessation doctrine—which prevents a defendant from changing its behavior only to revert back to its previous conduct after the case is held to be moot—applies. But the Policyholders have not even attempted to identify any change in State Farm's behavior as a result of this litigation and the record reflects no such change.

9

when that has historically been so is one like that presented here, where a class faces ongoing conduct that may recur.[15]

For that reason, we understand the Policyholders' position that the mere fact that Clark and Smith have had their current claims paid with the statutory interest does not mean that they and other prospective class members who are State Farm PIP policyholders do not face harm if State Farm is violating their rights under § 2118B by not invariably paying every PIP claim within thirty days.

But, that does not mean that the Superior Court was incorrect in denying leave to amend. At the core of the Superior Court's ruling was its understanding that § 2118B(c) provided its own remedy—the payment of the required interest— and that under the statute, there was no further relief that could be fashioned for Clark and Smith, and no class relief that could be judicially granted. The basis for that ruling was sound.

The origin of any class relief sought in the complaint must be § 2118B itself. By its plain terms, that statute contains its own consequence when an insurance

---

[15] *See Fed. Election Comm'n v. Wisc. Right to Life, Inc.*, 551 U.S. 449, 463 (2007) (applying the "capable of repetition, yet evading review" doctrine and holding that the Court had jurisdiction to decide the case because "there existed a reasonable expectation that the same controversy involving the same party will recur"); *Cruz v. State*, 990 A.2d 409, 417 n.36 (Del. 2010) (rejecting the State's argument that the case was moot because the defendant had recently completed his probation period, reasoning that the "capable of repetition, yet evading review" doctrine applied); *Radulski v. Del. State Hosp.*, 541 A.2d 562, 566 (Del. 1988) (concluding that a woman's involuntary confinement was "capable of repetition," but still finding the "appeal to be moot because the order from which the appeal was taken has expired by its own terms").

company "fails to comply with the provisions of this subsection."[16]  That remedy is that "the amount of unpaid benefits . . . shall be increased at the monthly rate of" interest ranging from 1.5% to 2.5% depending on the length of the delay.[17]  The Policyholders' complaint is premised on a reading of § 2118B(c) that would fundamentally transform its plain meaning.  No reasonable reading of the statute would suggest that an insurance company must process every PIP claim or some percentage of PIP claims within thirty days or be subject to a judicial declaratory judgment ordering it to do so.  Nevertheless, the Policyholders' proposed amended complaint asks the judiciary to delete from § 2118B(c) everything after the first sentence.[18]

It is also, of course, true that the statute says that "[t]he remedies provided by this section are in addition to all other remedies available to the claimant under state and federal statutory law."[19]  But that provision cannot be reasonably read as a license for the Judiciary to transform the thirty-day deadline in the first sentence of § 2118B(c) into a rigid deadline, or as an invitation for the Judiciary to act like an administrative agency and craft regulations governing the diverse circumstances involved in various PIP claims and determining when an insurer is justified in

---

[16] 21 *Del. C.* § 2118B(c).
[17] *Id.*
[18] *See* App. to Answering Br. at 13 (Proposed Amended Complaint ¶ 35) ("Under 21 *Del. C.* § 2118B(c), and under the obligations imposed by State Farm's insurance contracts with members of the proposed class, State Farm must pay or deny claims for Personal Injury Protection coverage within 30 days of receipt of the claim.").
[19] 21 *Del. C.* § 2118B(f).

delaying processing of a claim beyond thirty days and when it must be ordered to act within the deadline, at pain of being held in contempt of a judicial order. Rather, that alternative remedy provision is best read as making clear that a policyholder who suffers some additional, personalized harm—for example an interruption of medical care by a provider that has not been timely paid, with a resulting financial or medical injury to the policyholder—as a result of a bad faith failure to pay in a timely way, can be made whole.[20] Here, however, the Policyholders have not alleged that they have suffered any personalized harm, but rather that they disagree with State Farm's alleged practice of regularly delaying payments.

As is the case with a contract that has a pricing provision, a statute like § 2118B is one that the Judiciary should be reluctant to read as providing for specific judicial performance.[21] The General Assembly plainly considered the

---

[20] *See Clausen v. Nat'l Grange Mut. Ins. Co.*, 730 A.2d 133, 140 (Del. Super. 1997) ("An insurer who acts in bad faith in dealing with a claim may incur liability not only for damages under the policy but for uncovered economic losses of the insured, the insured's emotional distress damages, attorney's fees, and punitive damages."); *see also Pierce v. Int'l Ins. Co. of Ill.*, 671 A.2d 1361, 1363 (Del. 1996) (reversing and remanding case for trial on the insurer's bad faith where the plaintiff alleged that he "suffered emotional distress, humiliation, embarrassment and economic hardship as the result of [the insurer's] delay").

[21] *See Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010) ("A party must prove by clear and convincing evidence that he or she is entitled to specific performance and that he or she has no adequate legal remedy."); *Honeywell Int'l Inc. v. Air Prods. & Chems., Inc.*, 872 A.2d 944, 948–49 (Del. 2005) (explaining that the plaintiff had to amend its complaint after the Court of Chancery denied its motion for an injunction because it had monetary damages available); *State ex rel. Oberly v. Simpson*, 1988 WL 97837, at *2 (Del. Ch. Sept. 20, 1988) (declining to award a mandatory injunction because the plaintiff could bring a claim for the rent due); 81A C.J.S. *Specific Performance* § 5 ("If an adequate remedy is available to the plaintiff because of some

reality that there would be circumstances when an insurance company would be unable to process a claim within thirty days. It crafted a specific consequence involving an escalating interest rate to address the effect these delays would have on policyholders. By their complaint, the Policyholders seek to have the Judiciary implement an industry-wide directive in which the statutory consequence would be supplanted as the remedy with a judicially invented one, which would involve the Judiciary necessarily crafting what would look like an insurance regulatory scheme.[22] For this reason, it is easy to understand our Superior Court's justified reluctance to see the proposed amended complaint as pleading a properly justiciable claim.

In fact, the realities of what would be required to give life to any remedy for the Policyholders are such that the Superior Court would not have jurisdiction to grant it. Any remedy would necessarily have to take the form of a detailed

---

statutory enactment, he or she generally cannot seek relief by specific performance. If a contract itself has provided an adequate remedy for its own enforcement, which remedy is more suitable to the case than specific performance, equity will withhold its aid.").

[22] The Policyholders are correct that this Court has referred to the remedy provision in dictum as a "penalty." *See State Farm Mut. Auto. Ins. Co. v. Davis*, 80 A.3d 628, 631 (Del. 2013). By its own terms, § 2118B does not refer to the interest as a penalty. But, whether the statutory interest is fairly termed a "penalty" or not is immaterial; the statute permits an insurer to pay the interest in lieu of processing claims within thirty days. The Policyholders' argument that § 2118B's remedy provision is a penalty highlights an analogy between the relief they seek and specific performance. If a contract contains a penalty provision, the non-breaching party cannot obtain specific performance as its remedy. *See* 81A C.J.S. *Specific Performance* § 5. Instead, it must accept the contracted-for penalty. *Francis v. Medill*, 141 A. 697, 698 (Del. 1928). In § 2118B(c), the General Assembly has specified what the remedy for delayed payment should be. The Policyholders cannot elect to bypass the statutory remedy. *See* 22A Am. Jur. 2d *Declaratory Judgments* § 48 (2015); *see also Siegfried v. State, Dept. of Nat. Res. & Envtl. Control*, 1985 WL 165730, at *2 (Del. Ch. July 24, 1985).

13

mandatory injunction, regulating the circumstances in which State Farm had to meet the thirty-day deadline and detailing those when it was permitted to proceed more deliberately so long as it paid the policyholder the statutorily required interest.[23] A declaratory judgment is not a tool fitting to such an ambitious purpose.[24] And, if the Policyholders' answer is that the declaratory judgment they seek is as simple as the entry of an order requiring State Farm to process every claim within thirty days at pain of contempt, their answer is one that demonstrates how inconsistent their claim is with any reasonable reading of § 2118B and therefore why they fail to state a claim.

To this point, the Policyholders argue that judicial enforcement of the thirty-day deadline in § 2118B(c) is necessary because State Farm will otherwise

---

[23] *See* 26 C.J.S. *Specific Performance* § 118 ("The mere fact that a suit is denominated as one for a declaratory judgment does not necessarily mean that it will be treated as one. . . . A declaratory judgment must be accompanied by injunctive relief in the form of a mandatory injunction in order to successfully compel the government to act.").

[24] *See City of Wilmington v. Del. Coach Co.*, 230 A.2d 762, 349 (Del. Ch. 1967) ("The City argues in its brief that 'if a decree has to be entered putting into practical effect the judgment of the Court, it would be an injunction' against Delaware Coach. That may be. But equity jurisdiction, at inception of the lawsuit, may not be bottomed on the kind of relief to which the City may be entitled if it prevails. Here the City asks, initially and primarily, for a declaration of rights under the contract. A contract, breach and termination are alleged. And a declaration as to rights and duties of the parties flowing from that sequence is now sought, not injunctive relief."); DAN B. DOBBS, 1 LAW OF REMEDIES § 2.9(4), at 227 (2d ed. 1993) (explaining that an injunction is the appropriate remedy "to prevent violation[s] of rights" because, "[i]n such cases, the court is not merely providing a remedy for a right; it is creating and shaping the right itself"); 10B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2751 (3d ed. 1998) (explaining that the "purpose of declaratory judgments" is to address the situation in which "the controversy may not have ripened to a point at which an affirmative remedy" like "a judgment for damages or an injunction" is necessary); *see also Cantor Fitzgerald, L.P. v. Cantor*, 1999 WL 413394, at *3 (Del. Ch. June 15, 1999) ("A declaratory judgment declares the rights, status, and other legal relations of the parties to a lawsuit and is quite different both in its effect and requisite pleadings than a request for a permanent injunction.").

14

be free to implement a business plan that routinely treats the statutory interest as a cost of doing business, thereby delaying their policyholders' providers from receiving payment in a timely fashion. For starters, we must acknowledge in fairness to State Farm that the Policyholders have only alleged, and fall far short of proving, that State Farm has adopted such a policy of delay as its routine way of doing business. The Policyholders point to the numerous cases in which delayed processing occurred, but they did not ask about the denominator over which that numerator looms.

Most important for present purposes, given that this is a case involving the pleadings and the resolution of factual issues is not relevant here, the Policyholders have other means of recourse. Among them, of course, is seeking to have the General Assembly strengthen § 2118B(c) to increase the interest relief or adopt other statutory means to create a greater incentive for prompt processing. But another avenue the Policyholders slight is the ability of policyholders to ask the Insurance Commissioner to use her wide authority to enforce the Insurance Code, which includes the insurance provisions in Title 21. By statute, the Insurance Commissioner may investigate an insurer as often as she deems appropriate—

15

including at any time there is a pattern or practice of non-compliance[25]—and is authorized to use the Attorney General to enforce her orders.[26]

Under our system of government, however, the Judiciary cannot substitute its own judgment for that of the legislative branch. Section 2118B does not give the Judiciary a mandate to act in the role of the Insurance Commissioner or to read into § 2118B(c) mandates that the General Assembly could have, but did not, adopt. For these reasons, we agree with the Superior Court that the proposed amended complaint was futile and therefore that the court properly denied leave to amend.

## IV. CONCLUSION

For the foregoing reasons, the Superior Court's decisions of March 30, 2015 and June 23, 2015 are affirmed.

---

[25] *See* 18 *Del. C.* § 317 (explaining that the Commissioner has the authority "to determine whether any person has violated" the Insurance Code); *State Farm Mut. Auto. Ins. Co. v. Hale*, 297 A.2d 416, 418 (Del. Ch. 1972) (explaining that "[t]he Insurance Commissioner is charged with enforcing the provisions of the Insurance Code" and has the authority to determine when a violation occurs); *Davis v. State Farm Mut. Auto. Ins. Co.*, 2011 1379562 (Del. Super. Feb. 15, 2011) ("The Insurance Commissioner has the power to conduct an examination or investigation of any company as she deems proper to determine whether a violation of the Insurance Code has occurred."), *aff'd*, 2011 WL 4440073 (Del. Sept. 26, 2011).

[26] *See Stewart v. Wilmington Tr. SP Servs., Inc.*, 112 A.3d 271, 314 (Del. Ch. 2015) ("In the case of Delaware insurance regulation, however, no private enforcement scheme exists; to the contrary, the [Insurance Commissioner] has been given significant authority . . . . The statute does not suggest that the Legislature intended private causes of action to play a part in its enforcement . . . ."), *aff'd*, __ A.3d __, 2015 WL 6672222 (Del. Nov. 2, 2015); *id.* at 314 n.209 (observing that "the Commissioner [has] broad authority to institute proceedings through the Attorney General to enforce" any violations of the Insurance Code).