J-A21022-19

2020 PA Super 101

| DAVID ROUNICK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANIEL NEDUCSIN | : | No. 3299 EDA 2018 |

Appeal from the Order Entered October 4, 2018
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  October Term, 2015 No. 01741

BEFORE:  BOWES, J., OLSON, J., and FORD ELLIOTT, P.J.E.

OPINION BY OLSON, J.:                                    **FILED APRIL 20, 2020**

Appellant, David Rounick, appeals from the October 4, 2018 order granting post-trial relief and entering judgment in favor of Daniel Neducsin ("Neducsin").  We affirm.

The trial court summarized the factual history as follows:

On October 16, 2015, Appellant filed a complaint in confession of judgment pursuant to Pennsylvania Rule of Civil Procedure []2951.  The complaint included a Promissory Note ("Note") dated January 8, 2010[,] and signed by [Neducsin], in which [Neducsin] promised to repay Appellant a loan.  The principal amount of the loan was $160,000.00, the term was for two years, interest rate of six percent per annum was specified, and the Note contained language authorizing Appellant to "empower the prothonotary, clerk of court, or any attorney of any court of record of Pennsylvania, or elsewhere, to appear for and to confess judgment against [Neducsin] for the above sum[.]"  [Neducsin] failed to pay the Note as agreed, and Appellant filed for a judgment by confession.  On October 19, 2015, judgment was entered by confession for the sum of $168,000.00.  On January 12, 2016, the [trial court] granted [Neducsin's] motion to [open] the confessed judgment, and permitted [Neducsin] to file a

responsive pleading to Appellant's complaint.[1] Following discovery and a summary judgment motion, the matter was called for trial before [the trial court] on May 18, 2018.

During the bench trial, both parties presented evidence. It was undisputed that there were two notes underlying Appellant's claim. The first was an undated handwritten note for $106,000.00 memorializing a debt owed by [Neducsin] to Appellant, signed by both parties. The second was for $160,000.00 (including six percent interest per annum) payable to Appellant, signed by [Neducsin], and dated January 8, 2010. The note for $160,000.00 represented both the original debt to Appellant ($106,000.00) and an additional debt ($39,000.00) which Appellant paid to satisfy a gambling debt of [Neducsin]. The complaint in confession of judgment also indicated that although the loan was for $145,000.00, the parties agreed that interest for the first two years would be $15,000.00, and that at maturity, the principal amount would be $160,000.00.

At trial, Appellant explained how the principal amount was calculated[,] "$106,000.00 was checks and cash, and the additional money I paid off a bookie for him.[ L]ater on, after we got to [$106,000.00 in debt, Neducsin] then lost money to a bookie and I paid the bookie for [Neducsin]. [With regard to the Note, $145,000.00 represented c]ash, and the debt that I paid off for him to the bookie." On cross[-]examination, [Appellant] was asked[,] "and your testimony is that the $39,000.00 was for [Neducsin's] debt?" To which [Appellant] responded[, "]that's correct."

On May 2[9], 2018, the [trial] court [found] in favor of [Appellant and] against [Neducsin] in the amount of $229,094.90. The [amount] included the principal amount of $160,000.00, plus

_____

[1] "A petition to strike a confessed judgment and a petition to open a confessed judgment are distinct remedies; they are not interchangeable." **See Neducsin v. Caplan**, 121 A.3d 498, 504 (Pa. Super. 2015) (citation omitted), *appeal denied*, 131 A.3d 492 (Pa. 2016). A review of the record demonstrates that in the case *sub judice*, the trial court denied Neducsin's motion to strike the confessed judgment and granted the motion to open the confessed judgment.

> $61,094.90 in interest, at a rate of six percent per annum, plus collection fees in the amount of $8,000.00.[2]

Trial Court Opinion, 2/6/19, at 1-3 (record citations, original brackets, and extraneous capitalization omitted).

The record demonstrates that on June 7, 2018, Neducsin filed a motion for extension of time to file a motion for post-trial relief stating he had recently retained new counsel who needed time to review the record and trial transcripts before filing a post-trial motion. Neducsin's Motion for Extension of Time, 6/7/18, at unnumbered pages 2-5. On June 11, 2018, Appellant filed a response in opposition of Neducsin's motion for extension of time to file a post-trial motion. On June 27, 2018, the trial court denied Neducsin's motion for extension of time and subsequently ordered the parties to submit briefs on the issues raised in Neducsin's post-trial motion. A review of the trial court's June 28, 2018 order scheduling the submission of briefs demonstrates that the trial court considered Neducsin's motion for an extension of time to be a post-trial motion. **See** Trial Court Order, 6/28/18; **see also** Trial Court Opinion, 2/6/19, at 4.

After a hearing, the trial court granted Neducsin post-trial relief and entered judgment in his favor. Trial Court Order, 10/4/18, at 3. Appellant filed a motion for post-trial relief or, in the alternative, a motion for

_____

[2] The Note specified a five percent collection fee.

reconsideration. The trial court subsequently denied Appellant's motion on October 31, 2018. This appeal followed.[3]

Appellant raises the following issues for our review:

1. Whether []Neducsin waived the right to judgment [*non obstante veredicto* ("JNOV")] by (a) never moving for nonsuit or directed verdict during trial or (b) failing to file a timely post-trial motion in compliance with [Pa.R.Civ.P.] 227.1[]?

2. Whether the [t]rial [c]ourt erred and/or abused [its] discretion by (a) reversing its May 2[9], 2018 [o]rder, which enforced the [Note] against Neducsin, and (b) months after trial, issuing new findings of fact and conclusions of law, which now invalidated the [Note] as purportedly violating []73 P.S. § 2031?

3. Whether the [t]rial [c]ourt erred and/or abused [its] discretion by misapplying [73 P.S. § 2031] and Supreme Court precedent when [Appellant] did not participate in the limited gambling transaction at issue?

4. Whether alternatively, the [t]rial [c]ourt erred and/or abused [its] discretion by declining to enforce either the balance of the [Note] or the [handwritten] [n]ote when Neducsin failed to prove that [Appellant] had participated in [Neducsin's] alleged gambling transactions?

Appellant's Brief at 6.

Appellant argues that the trial court erred in granting Neducsin post-trial relief because he failed to file a timely post-trial motion pursuant to Pennsylvania Rule of Civil Procedure 227.1. *Id.* at 21-22.

---

[3] The trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) within 21 days. Appellant timely complied. The trial court subsequently filed its Rule 1925(a) opinion.

"The trial court's interpretation of [Pennsylvania Rule of Civil Procedure] 227.1 is a question of law, such that our standard of review is *de novo* and our scope of review is plenary." *D.L. Forrey & Assocs., Inc. v. Fuel City Truck Stop, Inc.*, 71 A.3d 915, 918 (Pa. Super. 2013), *citing* *Zappala v. Brandolini Prop. Mgmt.*, 909 A.2d 1272 (Pa. 2006). Rule 227.1 requires a post-trial motion to be filed within 10 days of the decision in a nonjury trial in order to provide the trial court with an opportunity to correct its own error; otherwise, objections not raised in a post-trial motion are waived. Pa.R.Civ.P. 227.1; *see also D.L. Forrey*, 71 A.3d at 919. Our Supreme Court stated,

> the filing of post-trial motions ensures that the trial [court] has a chance to correct alleged trial errors. This opportunity to correct alleged errors advances the orderly and efficient use of our judicial resources. First, appellate courts will not be required to expend time and energy reviewing points on which no trial ruling has been made. Second, the trial court may promptly correct the asserted error. With the issue properly presented, the trial court is more likely to reach a satisfactory result, thus obviating the need for appellate review on this issue. Or if a new trial is necessary, it may be granted by the trial court without subjecting both the litigants and the courts to the expense and delay inherent in appellate review. Third, appellate courts will be free to more expeditiously dispose of the issues properly preserved for appeal.

*D.L. Forrey*, 71 A.3d at 919 (ellipses and original brackets omitted), *citing* *Sahutsky v. H.H. Knoebel Sons*, 782 A.2d 996 (Pa. 2001). Non-compliance with the Pennsylvania Rules of Civil Procedure cannot be excused when parties have made no attempt at conformity. *Sahutsky*, 782 A.2d at 1001. Trial courts may choose, however, to overlook an issue raised post-trial in a procedurally imperfect manner and address the issue on its merits. *Id.*; *see*

*also D.L. Forrey*, 71 A.3d at 920 (stating, procedurally flawed post-trial motion that presents trial court with issues addressed on merits in opinion are not waived).

Here, Neducsin's motion for extension of time raises, *inter alia*, the claim that "[t]he [Note] was an illegal and unenforceable gaming contract which is void as a matter of law in Pennsylvania[.]" Neducsin's Motion for Extension of Time, 6/7/18, at unnumbered page 5 ¶12. The trial court held, "[i]t is the contents of a motion and not its caption [that] is controlling as to substance." Trial Court Opinion, 2/6/19, at 4, *citing Liles v. Balmer*, 653 A.2d 1237, 1240 n.5 (Pa. Super. 1994), *appeal denied*, 663 A.2d 692 (Pa. 1995). The trial court "construed [Neducsin's m]otion as a post-trial motion (despite its title) as it asserted valid grounds for relief." Trial Court Opinion, 2/6/19, at 5 (record citation omitted). The trial court then addressed the merits of Neducsin's claim. *Id.* at 6-11. It was well within the providence of the trial court to overlook the heading of the submission through which Neducsin raised his request for post-trial relief where Neducsin made an attempt at conformity to the Pennsylvania Rules of Civil Procedure, the trial court was able to understand the issue raised, and the trial court addressed the merits of the issue. *See D.L. Forrey*, 71 A.3d at 919-920. Therefore, Appellant's argument lacks merit.[4]

_____

[4] Moreover, a review of Appellant's opposition of the motion for extension of time to file a post-trial motion states, "[t]he matter before the [trial c]ourt is

Appellant also argues Neducsin failed to properly preserve the claims set forth in his post-trial motion. Appellant's Brief at 19-22. Appellant contends that, in failing to move for a nonsuit or a directed verdict, Neducsin waived his claims and the trial court erred in granting JNOV in favor of Neducsin.[5] *Id.*

The issue of waiver raises a question of law for which our standard of review is *de novo* and our scope of review plenary. ***Straub v. Cherne Indus.***, 880 A.2d 561, 566 n.7 (Pa. 2005). "[A] ground may not serve as the basis for post-trial relief, including a [JNOV], unless it was raised in pre-trial proceedings or at trial." *Id.* at 566. A motion for a directed verdict or a compulsory nonsuit at trial is appropriate even in the nonjury trial context. ***Wag-Myr Woodlands Homeowners Assoc. by Morgan v. Guiswite***, 197 A.3d 1243, 1250 n.10 (Pa. Super. 2018) (citation omitted). Raising an objection in pre-trial proceedings or at trial provides the trial court with the opportunity to correct any errors. *Id.* at 566.

> Pennsylvania [Rule] of Civil Procedure []227.1(b) requires that a
> post-trial motion must specify the grounds for relief and how they

---

[]Neducsin's motion for post-trial relief in the nature of a [JNOV], which is premised on the misapplication of a Pennsylvania statute regarding gambling." Appellant's Memorandum in Opposition of Neducsin's Motion for Post-Trial Relief, 8/8/18, at 1 ¶ I. Appellant clearly viewed the motion for extension of time as a motion for post-trial relief and understood the issue presented. Therefore, Appellant was not prejudiced by the trial court's treatment of the motion for extension of time as a motion for post-trial relief.

[5] We note that a motion for post-trial relief, which permits the trial court, *inter alia*, to enter judgment in favor of any party, replaces a motion for JNOV. Pa.R.Civ.P. 227.1(a)(1) and Note.

were preserved. [Pa.R.Civ.P. 227.1(b).] Otherwise, the issues are considered waived. *Id.* However, where an appellant properly preserves its issues at pre-trial proceedings or at trial, and raises them in the post-trial motion so that the trial court understands the issues, any arguable violation of Rule 227.1 does not require a waiver. *Meeting House Lane, Ltd. v. Melso*, []628 A.2d 854, 856–[8]57 ([Pa. Super.] 1993), *appeal denied*, []642 A.2d 486 ([Pa.] 1994).

*County of Delaware v. J.P. Mascaro & Sons, Inc.*, 830 A.2d 587, 590 (Pa. Super. 2003), *aff'd*, 873 A.2d 1285 (Pa. 2005).

Here, Appellant avers, "Neducsin did not file a motion for nonsuit or directed verdict during trial." Appellant's Brief at 20. Appellant contends that "[d]ue to his failure to make any such motion, Neducsin did not preserve the arguments he made after trial, namely that the [Note] was purportedly an illegal, unenforceable gambling transaction in violation of [73 P.S. § 2031]." *Id.* Appellant argues Neducsin, therefore, was not entitled to judgment in his favor. *Id.* at 19-20.

The trial court held that Neducsin raised the claim that the Note was an illegal, unenforceable contract in his opposition to Appellant's motion for summary judgment. Trial Court Opinion, 2/6/19, at 6, *citing* Neducsin's Response in Opposition to Appellant's Motion for Summary Judgment, 9/6/17. The trial court, finding that the claim was not waived, then proceeded to address the merits of the claim. *Id.* at 6-11.

A review of the record demonstrates that Neducsin first challenged the legality of the parties' purported contract in his motion to strike or, in the alternative, his motion to open Appellant's confessed judgment. Neducsin's

Petition to Strike or, in the alternative, Open Confessed Judgment, 10/27/15, at 3 ¶14(a). Specifically, Neducsin argued, "[t]he Note along with the confession of judgment is void *ab initio* and should be treated as invalid from the outset since there is no loan and the money sought by [Appellant] was from the proceeds of illegal professional sports bets." ***Id.*** Neducsin also raised his illegal contract claim in opposition to Appellant's motion for summary judgment. ***See*** Neducsin's Response in Opposition to Appellant's Motion for Summary Judgment, 9/6/17. Therefore, we find Neducsin preserved his post-trial motion claim in accordance with Rule 227.1.[6]

We now review Appellant's argument that the trial court erred in granting Neducsin's request for post-trial relief based upon the claim that the Note was an illegal, unenforceable contract. Appellant argues the trial court misapplied 73 P.S. § 2031 and erred when it reversed its judgment in favor of Appellant and entered judgment for Neducsin. Appellant's Brief at 22-39.

A challenge to the trial court's grant of a JNOV presents a question of law for which our standard of review is *de novo* and our scope of review is plenary. ***Reott v. Asia Trend, Inc.***, 7 A.3d 830, 835 (Pa. Super. 2010), *aff'd*, 55 A.3d 1088 (Pa. 2012).

---

[6] Additionally, the issue of the legality of a contract can never be waived based upon the principle that the courts of this Commonwealth will not be used to enforce contracts that are illegal pursuant to a statute or that violate public policy. ***See Am. Ass'n. of Meat Processors v. Cas. Reciprocal Exch.***, 588 A.2d 491, 495-496 (Pa. 1991) (holding that claim of illegal contract, clearly raised for the first time in post-trial motion, was not be waived for failure to raise pre-trial or during trial).

In reviewing a trial court's decision whether or not to grant judgment in favor of one of the parties, we must consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner. . . . We will reverse a trial court's grant or denial of a [JNOV] only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.

There are two bases upon which a [JNOV] can be entered; one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that, even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in his favor. Whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Reott*, 7 A.3d at 835 (original brackets omitted, ellipsis added).

Section 2031, pertaining to gaming transactions, states,

### § 2031. Gaming contracts to be void

If any person or persons shall lose any money or other valuable thing, at or upon any match of cock-fighting, bullet-playing or horseracing, or at or upon any game of address, game of hazard, play or game whatsoever, the person or persons who shall lose their money or other valuable thing shall not be compelled to pay or make good the same; and every contract, note, bill, bond, judgment, mortgage, or other security or conveyance whatsoever, given, granted, drawn or entered into for the security or satisfaction of the same, or any part thereof, shall be utterly void and of no[] effect.

73 P.S. § 2031.[7]  "Where a man lends money to another for the express purpose of enabling him to commit a specific unlawful act, and such act be afterwards committed by means of the aid so received, the lender is a *particeps criminis* and cannot successfully maintain an action against the borrower." **Ad-Lee Co. v. Meyer**, 144 A. 540, 541-542 (Pa. 1928) (citation omitted).  "The test whether a demand connected with an illegal transaction is capable of being enforced at law, is, whether the plaintiff requires the aid of the illegal transaction to establish his case[.]" **Scott v. Duffy**, 14 Pa. 18, 20 (Pa. 1849).  However, a promissory note that was not the result of a gaming transaction or wager and was not made with the knowledge that the money advanced was to be used for betting purposes is enforceable.  **Id.**

Here, the trial court made, and the record supports, the following findings of fact:

> 1. A contract dispute existed between [Appellant and] Neducsin, []and part of that dispute concerned illegal gambling debts.
>
> 2. Two notes were presented at trial on May 18, 2018:
>
> > a. An undated handwritten note for $106,000.00 memorializing a debt owed by [Neducsin to Appellant] signed by both parties.
> >
> > b. A note for $145,000.00 (including six percent interest per annum) payable to [Appellant], signed by [Neducsin], and dated January 8, 2010.
>
> 3. The note for $145,000.00 represented both the original debt to [Appellant] ($106,000.00) and an additional debt ($39,000.00)

---

[7] Section 2031 was enacted in April 1794 and derives its principle of law from Section 1 of the Statute of Queen Anne, which was enacted in 1710 in Great Britain.  **See In re August**, 448 B.R. 331, 347 (Bankr. E.D. Pa. 2011).

which [Appellant] paid to satisfy [Neducsin's] illegal gambling debt.

4. At trial, [Appellant] testified on direct examination:

a. "$106,000.00 was checks and cash, and the additional money I paid off a bookie for him."

b. "And then, later on, after we got to [$106,000.00 in debt, Neducsin] then lost money to a bookie and I paid the bookie for [Neducsin]."

c. [With regard to the Note, $145,000.00 represented] "[c]ash, and the debt that I paid off for him to the bookie."

d. "I don't know if he specifically said what it was for all the time, but I guess I assumed it was for gambling, for gambling debts."

e. "Well, the debt that I paid off was with a bookie that he set me up with, that he also lost money to."

5. On cross[-]examination, [Appellant] was asked "[a]nd your testimony is that the $39,000.00 was for [Neducsin's] debt?" To which [Appellant] responded[, "]that's correct."

Trial Court Findings of Fact and Conclusions of Law, 10/4/18, at 1-2 (record citations and original brackets omitted). The trial court concluded,

In this case, it is undisputed that part of the debt underlying the [Note] was payment to satisfy an illegal gambling debt. []Pennsylvania public policy prohibits the use of a contract that violates a Pennsylvania statute or law as a cause of action in a lawsuit. []Thus, because part of the [Note] sought payment for an illegal gambling debt, [Appellant's] cause of action must fail. The [Note] is void and wholly unenforceable.

*Id.* at 3.

The record demonstrates that Appellant's complaint in confession of judgment was based on the Note dated January 8, 2010 with a loan amount of $145,000.00 and the total sum due at the end of two years in the amount

of $160,000.00. *See* Complaint in Confession of Judgment for Damages, 10/16/15, at 2-3. It is undisputed that of the $145,000.00 loan amount in the Note, $39,000.00 of that was for money Appellant paid to a bookie by the name of "Stretch" for a gambling debt owed by Neducsin. N.T., 5/18/18, at 153 (stating, "both parties [are] in agreement that [Appellant] paid to a third party [$]39,000[.00] that was an obligation of [Neducsin]"); *see also* Trial Court Opinion, 2/6/19, at 7 (stating, "it is undisputed that part of the Note was payment for an illegal gambling debt. Appellant testified to this fact multiple times during the bench trial. Moreover, Appellant's attorney made the same assertion in his opening statement." (record citations omitted)). Thus, a portion of the money loaned to Neducsin was for illegal purposes. We agree with the trial court that Section 2031 "is unambiguous and clear that **every** contract entered to satisfy an illegal gambling debt is void, even if the contract is only partially for the repayment of an illegal gambling debt." Trial Court Opinion, 2/6/19, at 7 (emphasis added, original quotation marks omitted). By satisfying Neducsin's gambling debt, which in turn created an obligation owed to Appellant by Neducsin, Appellant was a *particeps criminis* with Neducsin in his gambling activity. A Note, such as the one in the case *sub judice*, in which a portion of the outstanding principal was the result of satisfaction of a gambling debt is unenforceable.[8] Therefore, Neducsin was

---

[8] It is unclear from the record whether a cause of action could be supported by the hand-written promissory note to repay $106,000.00. However, this promissory note did not form the basis of Appellant's cause of action and, therefore, we need not consider this issue.

entitled to a judgment as a matter of law.  Consequently, we find no error of law or abuse of discretion in the trial court's order granting post-trial relief and entering judgment in favor of Neducsin.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/20/20